UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ESTELLA D. WRIGHT,

    Petitioner,

vs.                                      Case No.:    3:15-cv-1207-J-32PDB
                                                                   3:13-cr-20-J-32PDB

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

This case is before the Court on Petitioner Estella Wright's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, Motion to Vacate)[1] and Memorandum of Law in Support (Civ. Doc. 2, Memorandum). Petitioner's Motion to Vacate is untimely under 28 U.S.C. § 2255(f)(1) because she filed it more than one year after her conviction and sentence became final. The question is whether Petitioner's counsel misled her into believing he was pursuing an appeal. The answer to that question affects whether Petitioner is entitled to equitable tolling, or alternatively, whether her claim about counsel failing to pursue a requested appeal was filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4).

---

[1]     Citations to the record in the underlying criminal case, United States vs. Estella Wright, No. 3:13-cr-20-J-32PDB, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:15-cv-1207-J-32PDB, will be denoted as "Civ. Doc. __."

1

Under Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's Motion to Vacate is due to be dismissed.[2]

I.  **Background**

On January 31, 2013, a grand jury indicted Petitioner on one count of conspiracy to make false claims, in violation of 18 U.S.C. § 286 (Count One), seven counts of theft of public money, in violation of 18 U.S.C. § 641 (Counts Two through Eight), and seven counts of identity theft, in violation of 18 U.S.C. § 1028A (Counts Eleven through Seventeen). (Crim. Doc. 1, Indictment).[3] Petitioner pled guilty to Counts One and Eleven through Seventeen under a written plea agreement. (Crim. Doc. 43, Plea Agreement). Petitioner waived the right to appeal the sentence as part of her Plea Agreement. (Id. at 12-13, ¶ B.6).

At sentencing, the Court determined that Petitioner had a total offense level of 21 and a Criminal History Category of III under the Sentencing Guidelines, yielding

---

[2] Petitioner also filed a number of non-dispositive motions, each of which are due to be denied as moot.

[3] The grand jury also indicted Petitioner's husband, Dorian Wright, on one count of conspiracy to make false claims (Count One) and two counts of theft of public money (Counts Nine and Ten).

2

an advisory sentencing range of 46 to 57 months as to Count One, plus a mandatory consecutive two-year term of imprisonment as to Counts Eleven through Seventeen. (Crim. Doc. 73, Sentencing Tr. at 5). Thus, Petitioner's overall Guidelines range was effectively 70 to 81 months in prison. The Court varied downward, sentencing Petitioner to a total term of 51 months in prison, consisting of 27 months as to Count One and 24 months as to Counts Eleven through Seventeen. (Crim. Doc. 73 at 86-87); (Crim. Doc. 62, Judgment). The Court staggered Petitioner's and her husband's sentences so their children would have parental supervision at all times. (Crim. Doc. 73 at 96-103).

The Court entered judgment on January 13, 2014. (See Crim. Doc. 62). Petitioner did not file a notice of appeal. As such, her conviction and sentence became final 14 days later, on January 27, 2014, when the time to file a notice of appeal expired. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999).

## II. Arguments and Expansion of the Record

Under 28 U.S.C. § 2255(f)(1), Petitioner had until January 27, 2015 to file the Motion to Vacate, but she did not do so by the one-year deadline. Petitioner filed the Motion to Vacate on October 6, 2015 (see Civ. Doc. 1 at 16), about one year and eight months after her conviction and sentence became final.

Petitioner raises four broad claims of ineffective assistance in the Motion. She argues (1) that counsel failed to properly advise her about her decision to plead guilty, failed to file pretrial motions, and failed to negotiate a better plea deal, (2) that after the re-arraignment hearing, counsel inadequately advised her about the nature of the

3

charges or the consequences of pleading guilty, (3) that counsel failed to review the presentence investigation report (PSR) with her, failed to make appropriate sentencing objections, failed to file a requested notice of appeal, and failed to consult her about her right to appeal, and (4) that counsel failed to present mitigation evidence about Petitioner's alleged diminished mental capacity and failed to request a mental health evaluation. (See Civ. Doc. 1; Civ. Doc. 2).

Question 18 on the § 2255 form advised Petitioner: "If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion." (Id. at 15). Petitioner left the section blank. (Id.). Instead, Petitioner stated in her Memorandum that she was "timely filing a Motion to Vacate Set Aside or Correct a Sentence by a Person in Federal Custody." (Civ. Doc. 2 at 1). Petitioner further stated "Defendant was committed to FCI [Federal Correctional Institute] on June 5, 2015. Defendant is now filing her timely 2255 motion based on Inefective [sic] Counsel. Wright was not informed by her Counsel of her Right to Appeal. No Appeal has been filed." (Id. at 5-6). Petitioner said nothing suggesting that counsel had misled her into believing he was pursuing an appeal. (Id. at 5-6, 23-24). The statement quoted above also suggests that Petitioner believed § 2255(f)'s statute of limitations began to run from the date she began serving her sentence, or June 5, 2015.

The United States moved to dismiss the Motion to Vacate as untimely. (Civ. Doc. 10). The United States further argued that Petitioner is not entitled to equitable tolling:

> Here, Wright erroneously states that her motion is timely because it is filed within one year of the date she surrendered to the Bureau of Prisons to begin serving her sentence. Her misunderstanding is not an extraordinary circumstance excusing her untimely filing, and she does not offer any explanation for not filing her motion within one year of her conviction. Indeed, if she had diligently sought review of former counsel's representation, she would have discovered the availability to do so, in a timely manner, under section 2255.

(Id. at 4).

In response, Petitioner stated she "was not aware of a timeframe" in which to file the Motion to Vacate. (Civ. Doc. 11 at 1). Petitioner also alleged, for the first time, that she did not file the Motion to Vacate earlier because counsel "led her to believe he was appealing my case." (Id.). While this claim seemed inconsistent with the Motion and Memorandum, both of which asserted the Motion was timely and said nothing about counsel misleading Petitioner regarding an appeal, the Court ordered counsel to answer certain questions about the allegation under Rule 7(a), Rules Governing Section 2255 Proceedings in the United States District Courts. (Civ. Doc. 12).

Before counsel could respond, Petitioner submitted copies of correspondence from the Clerk of Court, the court reporter, and counsel, as well as letters that she purportedly wrote to counsel. (Civ. Doc. 14, Civ. Doc. 14-1 through 14-10). The first letter referencing an appeal was written by Petitioner to counsel on July 20, 2015 – about one year and six months after her conviction and sentence became final. Petitioner claims that the first time she became aware no appeal had been filed was when she received a copy of the docket sheet from the Clerk of Court, which occurred

5

on or around July 16, 2015. (See Civ. Doc. 14; Civ. Doc. 14-2).[4]

On April 22, 2016, counsel answered the Court's order with a sworn amended affidavit. (Civ. Doc. 18, Amended Affidavit). In response to the Court's inquiry about whether Petitioner told counsel to file an appeal, counsel answered:

> No. The Petitioner has never instructed counsel to appeal her conviction in Case No. 3:13-cr-20-J-32PDB. In fact, a discussion was had between counsel and the Petitioner the day following her sentencing hearing, on December 19, 2013, regarding her sentence, her report date, and her right to appeal. The Petitioner, in that conversation, indicated that she did not want an appeal. Accordingly, no further steps were taken with respect to that particular issue.
>
> As a firm procedure, and as required by the CJA [Criminal Justice Act], Counsel keeps and maintains general notes on any time spent on legal matters relating to the client. My individual/ personal timesheet reflects that a discussion regarding an "appeal" was had on December 19, 2013 and that the client did not wish to appeal her conviction. These entries on the timesheet would have been made either the same day of the event, or shortly thereafter.
>
> Additionally, our office condenses any time entered for a client into an internal ledger, which is generated and updated every month, after entries for that month have been submitted. The firm ledger references the same conversation on December 19, 2013, stating that the client did not [wish] to appeal her conviction.
>
> Furthermore, a reduced, or simplified version of the ledger is submitted to the Court as required by the CJA. The CJA ledger references a discussion regarding an appeal. This information was submitted to the Court shortly after the conclusion of the case in 2013.
>
> These materials have been attached to this Affidavit at Exhibits 1, 2, and 3, respectively….

---

[4] While the Court considers the materials submitted by Petitioner and counsel, it does not consider letters dated after October 6, 2015, when Petitioner filed the § 2255 motion. Rule 7 allows the Court to expand the record with "letters predating the filing of the motion" among other materials, but it does not allow for letters post-dating the filing of the motion. Rule 7(b) (emphasis added). As such, the Court will not consider letters from Petitioner or counsel that post-date the filing of the § 2255 motion.

6

(Civ. Doc. 18 at 1-2 ¶ a) (emphasis in original). In response to the Court's question about whether counsel ever told Petitioner he was pursuing an appeal, counsel answered:

> No, counsel has never told or instructed the Petitioner that he was pursuing an appeal on her behalf. This issue was discussed and resolved on December 19, 2013 when the Petitioner affirmatively stated she did not want an appeal. All subsequent communications had to do with one of the following: delaying the Petitioner's surrender date due to medical issues she was facing, responding to the Court regarding preference and the timing of the sentence (as to who would serve their sentence first, the Petitioner or her Husband), or Petitioner's multitude of requests for specific documents relating to her case. With respect to the records requests, [t]he Petitioner only began requesting these materials in late 2014, and at no point requested an appeal, or discussed an appeal. The requests for her records indicated that the Petitioner was exploring her own legal options in anticipation of her upcoming incarceration, and at no point expressed either a direct, or indirect reference to any "appeal." The first mention of an appeal occurs in a letter dated June 20, 2015[5] that the Petitioner has tendered to the Court; a letter that my office has no record of despite maintaining an individual file and a redundant correspondence file. The date of that letter falls outside of a year from the date of her sentencing.
>
> Counsel did notify the Petitioner that representation had been terminated in response to the Petitioner's repeated requests for certain records that could no longer be obtained by trial counsel. My office and staff repeatedly responded to the Petitioner's requests, even if said documents had been previously tendered, and even directed the Petitioner on where and how to request documents and/or transcripts that we did not possess. At no point was the Petition[er] either explicitly or implicitly told that an appeal was being filed on her behalf.

(Id. at 3-4 ¶ d). Counsel attached the logs he referred to in the affidavit. (Civ. Doc. 18-1). Exhibit 1, which is counsel's timesheet for the date of December 19, 2013, states with respect to Petitioner, "pc with client; does not want appeal; discussing turn in

---

[5] Counsel likely meant July 20, 2015, which is the date written on the letter.

procedures and report date." (Civ. Doc. 18-1 at 1). Exhibit 2, which is an internal ledger keeping track of counsel's time with Petitioner, states the following:

| 12/19/2013 | JPL | Phone call with client; Does not want appeal; Discussing turn in procedures and report date; Gain time. | 110.00 | 0.20 | 22.00 |
| | JPL | Follow-up phone call with client regarding sentencing order (between her and her husband). | 110.00 | 0.20 | 22.00 |
| | JPL | Began draft/outline of recommendation to court for imposition of sentence. | 110.00 | 0.50 | 55.00 |

(Id. at 4). Finally, Exhibit 3 contains the following entry:

| 12/19/13 | Phone call w/ client re: appeal-report date | 0.2 | | | | |
| 12/19/13 | Follow up call w/ client re: sentencing order | 0.2 | | | | |
| 12/19/13 | Begin draft/outline of recommendation to court | | | | | 0.5 |

Petitioner responded that counsel's affidavit contained "several fabricated statements." (Civ. Doc. 21 at 1). Petitioner claimed she had a conversation on October 1, 2013 –the date of her change of plea colloquy – where she expressed a desire to appeal, and counsel allegedly told her he would "take care of it." (Id. at 1-2). Petitioner also claimed that after the sentencing hearing on December 18, 2013, she asked counsel if he was going to file an appeal. (Id. at 2). Counsel stated there was "no need" because Petitioner had been sentenced below the Guidelines range. (Id.). Petitioner claims she stated that she still wanted to appeal. (Id.). During a conversation after the sentencing hearing, Petitioner claims she re-asserted her desire to appeal, and counsel told her to call the next day. (Id. at 3). Petitioner claims she contacted counsel the following day and counsel advised her "that he will file and the process takes time." (Id.). Petitioner also submitted an affidavit from her husband, Dorian Wright, in which her husband stated that counsel said "no need" when Petitioner asked about filing an appeal. (Civ. Doc. 21-1 at 1). When Petitioner re-asserted her desire to file an appeal, Mr. Wright states that counsel told Petitioner to call him the next day. (Id.). Mr.

8

Wright does not attest to what was said on the phone call the following day. (Id.).

The Court ordered a second expansion of the record because the Court wished to examine any correspondence between Petitioner and counsel from the date of the sentencing hearing to the date on which Petitioner filed the Motion to Vacate. (Civ. Doc. 22). Counsel responded on August 19, 2016. (Civ. Doc. 24). Counsel submitted all correspondence in his possession falling within the specified date range, plus two items of correspondence from November 2015 and December 2015. (Civ. Doc. 24 at 4-13).[6] The record includes two letters from Petitioner, dated July 10, 2015 and July 29, 2015, in which Petitioner requested certain records and transcripts but made no mention of an appeal. (Id. at 8, 9). Additionally, counsel denied that he told Petitioner over the phone that he would file an appeal. (Id. at 1 n.1). Counsel stated that he or his staff had various phone conversations with Petitioner or a family member about such things as extending Petitioner's surrender date, but "[t]hose conversations did not include any discussions regarding an appeal." (Id.).

In response to the second expansion of the record, Petitioner largely reiterated everything she had said before, with one alteration. (See Civ. Doc. 28). Whereas previously Petitioner suggested that counsel agreed to file an appeal during a phone conversation the day after the sentencing hearing, and advised her that an appeal would take time (see Civ. Doc. 21 at 3), Petitioner suggested that counsel stated these things on the day of the sentencing hearing (see Civ. Doc. 28 at 3).

---

[6] As noted before, under Rule 7(b) the Court will not consider letters that post-date the filing of the § 2255 motion. Footnote 4, supra.

9

## III. Discussion

Section 2255 imposes a one-year statute of limitations for filing a motion to vacate. The limitations period runs from the latest of four dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §§ 2255(f).

Petitioner's Motion to Vacate is untimely under § 2255(f)(1). Nothing in the filings suggests that § 2255(f)(2) or 2255(f)(3) is applicable. However, Petitioner's claim that counsel led her to believe he was pursuing an appeal, and that she only discovered in July 2015 that no appeal had been filed, suggests two possibilities: (1) that she may be entitled to equitable tolling, or (2) that Petitioner's claim about counsel failing to file a requested appeal is timely under § 2255(f)(4).[7] Below, the Court explains why neither exception applies.

---

[7] Petitioner also stated that she "was not aware of a timeframe" in which to file the Motion to Vacate. (Civ. Doc. 11 at 1). However, ignorance of the statute of limitations is not an excuse for failing to timely file a motion to vacate. Spears v. Warden, 605 F. App'x 900, 904 (11th Cir. 2015) ("[W]e have not accepted a lack of legal education as an excuse for a failure to file in a timely fashion.") (citing Rivers v. United States, 416 F.3d 1319, 1323 (11th Cir. 2005)).

10

### A. Equitable Tolling

Section 2255(f)'s statute of limitations is subject to equitable tolling in appropriate circumstances. Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999). Equitable tolling "is an extraordinary remedy 'limited to rare and exceptional circumstances and typically applied sparingly.'" Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1221 (11th Cir. 2017) (quoting Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009)). "To warrant that extraordinary remedy, a petitioner must demonstrate '(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing.'" Id. (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)).

An "extraordinary circumstance" may exist if the petitioner's counsel repeatedly deceived the petitioner into believing that counsel was pursuing an appeal. See Kicklighter v. United States, 281 F. App'x 926, 930-31 (11th Cir. 2008) (petitioner's allegation that his attorney deceived him about an appeal and ignored him for months while the statute of limitations was running, if true, raised issues related to equitable tolling and § 2255(f)(4)). If Petitioner shows that she was diligently pursuing her rights during that time, she may be entitled to equitable tolling. See Kicklighter, 281 F. App'x at 927-28, 931 (petitioner's allegations suggested diligent pursuit of his rights where he, his wife, or his daughter contacted counsel's office "hundreds of times" about the status of an appeal or Rule 35 motion, but were repeatedly given false assurances); Aragon-Llanos v. United States, 556 F. App'x 826, 828 (11th Cir. 2014) (petitioner called counsel's office at least 20 times while incarcerated to ask about the status of

11

his appeal, only to be misled by counsel's assistant that counsel was working on it).

The record refutes Petitioner's claim that counsel misled her into believing he was pursuing an appeal. Notably, Petitioner made this claim for the first time only after the United States pointed out that § 2255(f)'s limitations period did not run from the date she reported to prison, as Petitioner seemed to believe in her Memorandum (which made no mention of counsel misleading her about the existence of an appeal). Counsel submitted an affidavit in which he explained in detail: (1) that Petitioner never requested that he file a notice of appeal, (2) that he and Petitioner discussed the issue of filing an appeal on December 19, 2013 – the day after her sentencing hearing – where they resolved not to pursue an appeal, and (3) that counsel never told Petitioner or led her to believe he was pursuing an appeal. (Civ. Doc. 18 at 1-4).

"Ordinarily, contested factual issues in a § 2255 proceeding may not be determined based <u>only</u> on affidavits." <u>Alvarez-Sanchez v. United States</u>, 350 F. App'x 421, 423 (11th Cir. 2009) (emphasis added). However, "[w]here the affidavits are supported by other evidence in the record the court may rely upon them." <u>Owens v. United States</u>, 551 F.2d 1053, 1054 (5th Cir. 1977).[8] Importantly, other evidence in the record corroborates counsel's affidavit. Counsel attached to his affidavit three contemporaneously created timesheets, all of which state that counsel had a phone call with Petitioner on December 19, 2013 where they discussed an appeal and a report date. (Civ. Doc. 18-1). While the third exhibit does not state what the outcome of that

---

[8] Decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981 are binding in the Eleventh Circuit. <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

conversation was (id. at 6), the first two exhibits state that Petitioner did not want an appeal (id. at 1, 4). These records directly corroborate counsel's statement that he and Petitioner discussed an appeal on December 19, 2013 and decided not to pursue one.

Other circumstances support counsel's affidavit as well. Petitioner (1) pled guilty, (2) received a sentence that was below the Guidelines range, and (3) waived the right to appeal her sentence, all of which indicate she would have had no interest in an appeal. The Supreme Court identified each of these factors as "highly relevant" to whether a rational defendant would have wanted to appeal or whether the defendant reasonably expressed an interest in doing so. Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). Additionally, at the end of the sentencing hearing, the Court advised Petitioner that she had 14 days after the entry of judgment to file a notice of appeal, but Petitioner did not voice an interest in doing so. (See Crim. Doc. 73 at 88-89). Finally, none of the letters from Petitioner in counsel's file asks about an appeal. (See Civ. Doc. 24 at 4-13).[9] While these facts standing alone might not be dispositive, when combined with counsel's affidavit and supporting internal records, they reinforce counsel's statement that Petitioner did not want to file an appeal.

As such, the record refutes Petitioner's claim that she filed late because counsel misled her about the existence of an appeal. The record shows that Petitioner and

---

[9] For her part, Petitioner submitted a letter that she purportedly wrote to counsel on July 20, 2015, in which she requested documents concerning her appeal. (Civ. Doc. 14-4). Notably, counsel has no record of receiving this letter "despite maintaining an individual file and a redundant correspondence file." (Civ. Doc. 18 at 4). Additionally, this letter, purportedly written nearly one year and six months after Petitioner's conviction and sentence became final, is the first letter to ask about an appeal.

13

counsel discussed filing an appeal and decided not to pursue one. This conclusion is supported by counsel's affidavit and corroborated by counsel's internal records and the surrounding circumstances of the case. Accordingly, Petitioner knew or should have known that her conviction and sentence became final 14 days after the entry of judgment because she knew that no notice of appeal would be filed.[10] Her professed ignorance or misunderstanding of § 2255(f)'s statute of limitations (Civ. Doc. 11 at 1) provides no excuse for failing to file on time. Spears, 605 F. App'x at 904; Rivers, 416 F.3d at 1323. Thus, the Court finds that the record refutes the existence of an "extraordinary circumstance" that would support equitable tolling.

The Court adds that the record also does not reflect that Petitioner diligently pursued her rights. This is not a case where Petitioner or a family member repeatedly contacted counsel about the status of an appeal, only to be given false assurances each time that an appeal was filed. Cf. Kicklighter, 281 F. App'x at 927-28; Aragon-Llanos, 556 F. App'x at 828. The first record of Petitioner inquiring about an appeal is a letter she purportedly wrote on July 20, 2015, nearly a year and six months after her conviction and sentence became final. While Petitioner generally alleges that counsel misled her about filing an appeal (see Civ. Doc. 11 at 1-2), she does not offer any details about what efforts she made to follow up on an appeal, when or how frequently she made those efforts, or what responses she received. Petitioner knew she had 14 days following the entry of judgment to file a notice of appeal. (See Crim. Doc. 73 at 88). As

---

[10] Petitioner would have known when judgment was entered because on January 16, 2014, counsel mailed her a copy of the judgment. (Civ. Doc. 24 at 4).

14

early as January 27, 2014, Petitioner could have discovered the fact that no appeal had been filed by simply calling or dispatching a letter to the clerk of court.[11] However, Petitioner did not request a copy of the docket sheet until sometime in July 2015. As such, the record does not reflect that Petitioner diligently pursued her rights. See Anjulo-Lopez v. United States, 541 F.3d 814, 819 (8th Cir. 2008) (petitioner did not act with diligence in discovering that his attorney did not file a notice of appeal, where the absence of such a notice was a matter of public record and "a duly diligent person in Anjulo–Lopez's circumstances could have unearthed that information anytime after the deadline for filing the appeal passed."); Owens v. Boyd, 235 F.3d 356, 360 (7th Cir. 2001). Accordingly, Petitioner does not qualify for equitable tolling.

### B. Section 2255(f)(4)

Had counsel misled Petitioner about the existence of an appeal, Petitioner's claim that counsel failed to file a requested notice of appeal would arguably be timely under § 2255(f)(4).[12] The claim would be timely if Petitioner filed it within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). For the same

---

[11] Additionally, Petitioner was not hamstrung by the conditions of confinement in discovering that no notice of appeal had been filed. Petitioner did not have to self-report to prison until June 5, 2015, well over a year after her conviction and sentence became final. (See Crim. Doc. 68).

[12] Petitioner's other claims concern counsel's effectiveness in connection with her decision to plead guilty or her sentencing. As such, Petitioner knew or should have known of the facts supporting those claims at the time her conviction and sentence became final. Section 2255(f)(4) therefore does not extend the statute of limitations for Petitioner's other claims.

reasons discussed in connection with equitable tolling, however, § 2255(f)(4) is not applicable. Section 2255(f)(4) therefore cannot save this claim.

Accordingly, in light of the foregoing discussion, it is hereby **ORDERED:**

1. The United States' Motion to Dismiss (Civ. Doc. 10) is **GRANTED**.

2. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DISMISSED** as untimely.

3. Petitioner's Motion for Leave to File Supplemental Letter (Civ. Doc. 6) is **GRANTED**. However, while the Court is sympathetic to Petitioner, it cannot grant § 2255 relief based on Petitioner's commendable efforts at self-improvement while incarcerated.

4. Petitioner's Motion Requesting Record (Civ. Doc. 7), Motion for Appointment of Counsel (Civ. Doc. 8), Motion to File Addendum to Ineffective Assistance Claim (Civ. Doc. 9), Motion Requesting Grand Jury Records (Civ. Doc. 13), Motion for Leave to Amend (Civ. Doc. 23), and Motion for Expedited Judgment (Civ. Doc. 31) are **DENIED AS MOOT.**

5. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district

court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, she is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 17th day of December, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:
Counsel of record
Pro se petitioner